Defendant Appellant, pardon me on behalf of the Defendant Appellant, Attorney Mr. Christopher McCoy, pardon me on behalf of the Prince of Appalachia, Attorney Ms. Joan Ann Kripke. It's Joan, isn't it? Not Joan? It's Joan. It says Joan here. Thank you. Mr. McCoy? May it please the Court, Counsel. My name is Christopher McCoy, and I represent Mr. Anthony Adamaitis. The issue presented in this appeal is whether this case should be remanded for preliminary and critical inquiry where the trial judge did not even let the defendant state his claims of ineffective assistance, let alone inquire as to their factual basis. So the issue here centers around the trial court's conduct. However, the state in its brief focuses on a different issue, that being whether a speedy trial violation occurred. Well, the issue that he raised in his pro se motion was a speedy trial violation, correct? Yes. And that was the only issue he raised. That was the only ineffective assistance issue he raised in the written motion, that's correct. However, that was not the only time when he raised a claim of ineffective assistance. On the first status date after trial, he asked to make a statement on the record and then began expressing his displeasure with his attorney and commenting on some type of – Again, I read the briefs, but what were the exact words that he said? Let me find it. He said, is there any way I can state anything for the record? The defense counsel advised against it, and the court asked him if he'd talked to his attorney. Then the defendant said, yes, I have, but I just wanted it known for the record that two months ago, before he went to trial, my lawyer told me to my face that he believed I was guilty. And at that point he's interrupted by the court. He continues, he believed that. Again, he's interrupted by the court. And then the defendant finally says, he said he would admit that. And finally the court says, thank you, it doesn't matter to me, sir. It doesn't matter at this point. Thank you. Good luck to you. And following these comments, the proceedings on that day immediately adjourned. So we ultimately don't know exactly what Mr. Adamides' claims were because he was repeatedly and fairly emphatically cut off by the trial judge. It seems that they were not speedy trial claims. From what little he got out, some type of pretrial conversation with his attorney. And because of this, the fact that he seems to be talking about something different and ultimately, the major factor, we don't know exactly what his claims were, merely addressing the speedy trial issue is insufficient. And in this way, Mr. Adamides' case is very similar to People v. Washington, a first district case we cite in our reply brief, where in that case, as in Mr. Adamides' case, the court repeatedly cut off the defendant such that he was unable to state his claims of ineffective assistance. And the first district held that because of this, there's no way to know exactly what the defendant in Washington's claims were. And so the case needed to be remanded for a preliminary critical inquiry. And the same result is warranted here. Because ultimately, in Mr. Adamides' case, again, we don't know what he was trying to state to the court. And so there's no way for us to know whether there was any merit to this or for the court to even begin to evaluate whether or not these claims had any merit to them. And so it is for this reason that the court's complete lack of any inquiry, complete lack of any questions to Mr. Adamides, coupled with cutting him off and not letting him even finish his sentence, was beyond more than just an inadequate critical inquiry. It was a completely nonexistent inquiry in this case. We can infer, can't we, from the limited remarks that he was allowed to make that he was talking to his attorney about something other than speeding trial. Because speeding trial has nothing to do with guilt or innocence. It's whether or not you've been deprived of your right to speed trial. So there was some other conversation, some substantive conversation that was going on. We just don't know what it was, correct? Exactly. And that's exactly true. We don't know if the defendant asked his lawyer to get the videotape from the Taco Bell or whatever. We just simply don't know, correct? Yes. And so there's no way to evaluate the merit of those claims. And that's why a preliminary crankle inquiry is required in this case. Unless there are any further questions, we would respectfully request that this court remand Mr. Adamides' case for that preliminary inquiry pursuant to having crankled and people be mourned. Thank you. Thank you. Do you have an opportunity to make rebuttal? Thank you. Ms. Kripke? May it please the court, John Kripke on behalf of the people of the State of Illinois Council. It's clear that the defendant was cut off by the court. I don't know, Justice Burkett, that you can reasonably infer from the comment that he made that there were other ineffective assistance claims that this defendant was going to. I'm not suggesting that. I'm suggesting that from the limited remarks that the trial court, you agree the trial court should not have cut him off? Not necessarily, because what he was talking, because what he was saying was a privileged conversation between himself and the defendant. He can waive the privilege. It happens all the time. And the court, when a client is complaining about representation, we have said repeatedly, don't cut him off. Let him speak to his lawyer and then let him make his or her statement. It's similar to McCrae, a case that I was on with Justice McLaren, where the trial court did the right thing in allowing the defendant to explain the full import of his motion. And had he not been allowed to explain the full import of his motion, the result of that case would have been far different. But here, the defendant is talking about a conversation where they're talking about guilt, not about speeding trial, about guilt. And the court cuts him off. So that is correct. However, the defendant, regardless of how abrupt and inappropriate the court's remarks were to the defendant, three months later, he filed a written motion. And nowhere in that does he bring up what he wanted to say at the other time. And there's no way that you can say, there's no reasonable inference that the defendant has said that he was intimidated from bringing that up. He brought up a number of points that he felt demonstrated why he was improperly convicted. Putting those aside, he then went into, I think it was four paragraphs, very detailed, explaining why he thought his counsel was ineffective for failing to move to dismiss based on speedy trial. Again, the conversation that was cut off did not appear, at least, to be just limited to speedy trial. And it appeared to be a substantive conversation he was having with his lawyer. And he may have thought, by being cut off, that he couldn't raise any of those concerns. Maybe he wanted to go into the speedy trial. Well, that's the point. Maybe. Maybe. But there has to be a reasonable inference. So there's nothing to make the inference that there isn't a reasonable complaint. I'm sorry? How can we make the opposite inference? Because what he started out by saying was, my lawyer thought I was guilty. If that was the introduction to a speedy trial, then we would have every single convicted defendant up here who felt that they had gotten short shrift by their attorney. That's not the point. If that's what he says, how can we infer from that statement that this was not and would not have been the subject of a crackle inquiry? I mean, you're saying we can't infer that it was something more than speedy trial, but you're, in effect, asking us to infer that it wasn't. Because he could have then brought it up in his written motion. He had the opportunity. He could have, but was he required to? And as Justice Jorgensen says, why wouldn't he think that he's already been foreclosed? Because he went ahead and filed it. Did the judge say to him, I'm not going to listen to what you have to say, but if you want to put it in writing, I'll read it? But he did it on his own. No, you didn't answer my question yet. The question was, did the judge say, I'm not going to listen to what you have to say, but you can put it in writing? No, he didn't. Well, if he had said that, and then he had put something in writing, I would buy your argument. But since he didn't say that, I'm not going to buy your argument that the motion that he filed implicitly would include what he supposedly was cut off previously. I didn't say that it supposedly included. He could have included it. And I don't think the judge has – I don't think that he has – I believe that the court conducted this improperly. But I think that the issue that was put before this court and the court below, that this court can affirm the dismissal or the denial of the motion based on the fact that his speedy trial claim is wrong. How about this? That the very last thing the judge says to him when she cuts him off – I think it was – He's looking. Sorry. When he cuts him off, is that, thank you, it doesn't matter to me, sir. So if that's the last thing he hears from the trial court, why would he think he has a shot at putting those other issues into a written motion? Because the first thing – because, right? Because he put other issues – he put everything he wanted to. He put a issue. We don't know that. We know he put speedy trial. He put speedy trial. But maybe he figures – maybe he doesn't know that the other issues are – not have to do with ineffective assistance. Because he didn't entitle the motion. But he does know that whatever it was he was going to say doesn't matter to the trial judge. And if that's the last thing you hear, how can we infer that he would have put it all in? He's been told it doesn't matter. He also had counsel who filed a motion for a new trial, and that was denied also. Yet he went ahead and raised other issues having to do with the result of his conviction. And he could have inferred the same thing. Well, my lawyer went ahead and tried to have my conviction reversed, and it didn't work. But you know what? I'm going to go ahead, and I'm going to put my issues into a motion also. So if he had the gumption to do that, it doesn't seem to me that he would be swayed from putting the other issues in. If the judge had said – Any other issue he might – excuse me. If the judge had said, Mr. Adamaitis, sir, tell us anything you want to tell us about your relationship with your lawyer or anything else, and he didn't say anything more than five minutes and covered two subjects. Now, with that kind of a record, I would buy your argument that we could affirm. But based upon this record where the judge basically cuts him off and tells him in a prejudgment, it doesn't matter to me. And either the judge was able to understand what he was saying, but the transcript doesn't relate what he was saying because he was supposedly inaudible or whatever. How are we supposed to affirm something that we don't know what happened? We've had termination of parental rights cases where the judge doesn't make findings. We send it back for findings. Why wouldn't we do it like that in this case and send it back for findings? Because you have a written motion. I understand what you're saying. You're saying, well, he would be afraid or intimidated, but apparently he wasn't. I agree 100 percent with your argument that if we know what the issue that the defendant's raising, that even if there's an improper crankle hearing, we can affirm based upon the record. But, again, we just don't know what he was going to say. And there was, I know you argue around this, there was a substantive argument with his lawyer about the evidence. He said that. My lawyer told me he thinks I'm guilty. And then he gets cut off. But just because the lawyer thinks he's guilty doesn't mean— Do we have a case that stands for the proposition that where we don't know the issues that the defendant was going to raise, we can affirm where there's an improper crankle hearing? No. Okay. But I still think that you have a written motion that puts it out. And the rest of our argument would be that— That's the only issue he was raising. Like I said, if the judge had said, I'm not going to listen to what you have to say, but if you put in a written motion, I'll consider it, then I might buy your argument. Because he's apparently, based upon logic and a timeline, he's following the judge's suggestion. But the judge's suggestion, based upon this record, is go away and don't bother me. So why would he bother him again with a motion that would bring up old things that he was told by the judge, go away, don't bother me, whereas a reasonable person, assuming he's a reasonable defendant, would prepare a motion that would bring up new subjects that supposedly the judge hasn't already prejudged and hasn't already told him, go away and don't bother me? Because he did. Because he raised issues about his conviction. And that was decided by a jury. And his lawyer's motion for a new trial was denied. Which implies that what he brought up were other issues about his problems, not the issue that was raised here. If I tell my child, I don't care how old you are or how old you will ever be, I will never give you a pony, and he files a motion asking me to give him a dog, does that mean he's given up his desire to have a pony? How big is the dog? It's a great day. You can ride him. Would you agree that the only way that we can know for certain what the defendant was going to say is by remanding him for a frankly hearing? That's the only way we can know. Would you agree? Do I agree? If we let him finish his sentence? Well, I have to. Logically, I have to. Of course. But I don't think legally it's demanded in this particular case. For those reasons, I ask you to affirm the denial of the defendant's motion. Thank you. Thank you. Mr. McCoy. Unless there are any further questions, I would just press on. Did you ever ask your parent for a pony? No. How about a dog? We'll take the case under advisement. There will be a short recess. We have other cases on the call. I believe the next one is at 1 o'clock.